All right, we're happy to hear argument in Bunn v. Oldendorff Carriers. Good morning. May it please the Court. The District Court in this case erred in not granting summary judgment because whatever caused the injury was open, obvious, and seen by the plaintiff himself. When you go through a trial, you no longer can challenge the refusal to grant summary judgment. I don't know if that makes any difference to your arguments because your arguments are the same with respect to the trial, but neither party seemed to have grasped the grant or denial of summary judgment is no longer an issue. Do you get my drift? I understand your point, but the facts didn't change at trial in the motion for a directed verdict. Well, that's a whole different issue. And the motion at the end of the trial should have been granted for precisely the same reason. And the legal standard is exactly the same. Yes. But just for future reference, I wouldn't be challenging grants of summary judgment if the case has gone to trial. Just to set the stage a little bit, I think it's important to understand that this ship was longer than two football fields and almost as wide. It's a huge piece of equipment, and the piece of equipment on shore that is loading the ship is also huge, multi-stories, very complex, and something that can load thousands of tons of coal an hour. Another point that I think needs to be made is that there was nothing wrong with the ship. There's no contention of any defect in equipment, no contention that there was anything hidden. To use the cases of this circuit, there was no broken hatch board. I mean, we get all that. The problem was there was ice that hadn't been removed. Yes, there was, Your Honor. We never promised. That's what the case is about. And there was never a promise that a 700-foot ship was going to be ice-free or completely free. And that wasn't the basis of a lawsuit on some promise that a 700-foot ship would be made ice-free. I mean, the issue is... Well, you go ahead. You go ahead. I mean, we're here to review the district court's ruling as a matter of law, not to retry the case. Much of what you've shared with us so far sounds very much like jury argument to me. Well, I think... Let me just make sure I'm focusing on what we have here. I understand the nature of the ship. You've got these holes and all this up there. But the district court sets out this general duty, makes it clear that if it's open and obvious, you just can't do it. I mean, there's a bar to recovery here. Yes, sir. But then the court says, this is not the typical case. This is a case in which the ship owner represented that it would clear the path. And that changed the focus of whether that defense would be absolute here. What I don't quite understand is, well, you got it, but you still can get it on comparative negligence, but you didn't get it on comparative negligence. You only got 15% of it. Yes, sir. But it essentially said, it's not barred under the general rule because this is not a typical case. If you didn't make that representation that you would clear it, then perhaps you would have a better case. The representation was made that there would be paths cut or ice treated, and that was done. Mr. Bunn observed those paths, and he admits observing those paths. But not when he finished that hole number 7 and he was getting ready to go to hole number 3. That was the problem. Yes, and he walked up the path to number 3, and then he knowingly stepped off the path, and he admits knowing that there was no path where he stepped. So why is that not a question back then? I mean, why is that something, if he says one thing and it turns out this, and it goes before the jury, and that takes it away from the open and obvious business. No, it was open and obvious because the man saw it. The cases are clear that if... But if the jury finds that he made a representation or if the court has found he's made a representation that the shipowner is going to clear this, that takes it out of the general rule. No, I don't think so, Your Honor. You think that is a matter of law is wrong under the Supreme Court cases. Isn't that right? I didn't catch you. You think that the idea that a representation takes you out of the open and obvious is the wrong view according to the Supreme Court cases. That's what the Second Circuit seemed to be, and there was a subsequent Supreme Court case. Isn't that right? Yes. Well, you act like this is a new concept for you. No. It was the condition that was seen by that longshoreman was open and obvious. And as far as you're concerned, the promise that was made by your client doesn't affect that. It's still open and obvious. Yes, because this man was not just a worker bee. He was the supervisor of loading. He said he was the supervisor of loading. The only tool he had was a radio. His function was to coordinate between the shore people and the ship. He admits seeing something that he didn't think was proper or safe, and he proceeds in the face of that to walk across it instead of going back and doing his job. The stevedore... Are we talking about the plaintiff now? Are we talking about the plaintiff now? Yes, ma'am. Okay, but you're getting into the facts. I thought that your position was, as a matter of law, it doesn't matter what was said to the plaintiff if it is open and obvious. That's correct. Okay, then I don't know if it matters where he worked or what he did or anything else, if it was open and obvious to him. Yes. Okay. And he admits that it was open and obvious to him. And once something is open and obvious, then that's really the end of the case. I think the Liege case shouldn't be followed by this circuit for precisely this reason, because we get into the he said, she said between the ship and the terminal. And the weakness of that argument is also pointed out by the plaintiff admitting that, well, it wouldn't apply two days later. But in this case, it applies because it's the perfect golden hour when whatever was said somehow was going to apply. Tell me about these cases that say that if something is open and obvious, that if the ship owner sees it, knows of this condition, and then undertakes the duty, that open and obvious is still there. What case is that? The second circuit? Yeah, I want to know about the case. I want to hear about it. Are you referring to the Liege case? Yeah, the Liege case. The Liege case involved a very different fact situation. It involves something called a masthouse, which is 20 by 30 feet. Don't you say Liege is no longer good law on that principle because of the more recent Supreme Court case? I think you could take that action. Well, I thought you did take that attitude. Did you not take that attitude now? My position, Judge Motz, was that it's different factually. It just doesn't apply. We are not so interested. You can make whatever distinctions you want. But we're here dealing with the law. We're not finding facts, what Judge Davis said to you in the very beginning. The jury argument is good for you, although it apparently didn't succeed here. But that's not where we are. Never mind. Well, you do have the Supreme Court case. Yes. But you have cases from the Fourth Circuit that follow that case and interpreting it. There are no Fourth Circuit cases interpreting Liege, Your Honor. There's only one case that cited it, and it's not cited by the plaintiff. That's the Woodruff case, and it's not cited for the same provision of Liege. Liege was a very early case, and I think if you were to follow Liege, if one were to put Liege in this circumstance, it would be if a path had been cut on the masthouse that was the issue in Liege, and the stevedore foreman came along and deliberately, knowingly... What Supreme Court case are you talking about? No, we're talking about the Liege case, the Second Circuit case. Which one is the Supreme Court case? Tell me the Supreme Court case. Well, that's the Cyndia case is the one that lays out quite clearly that the primary duty for the safety of the longshoreman is with the stevedore or the terminal operator, and that so long as any problem with the ship is open and obvious or one that a competent stevedore or terminal operator could deal with, then the vessel is not liable. The world changed in 1972 with the 72 amendments, and the primary duty for the safety of the longshoreman is clearly with the stevedore or terminal operator, and all the cases are very clear that the duty is very limited with regard to the vessel. Okay. As I understand it, and not from the briefs, because they didn't do it this way, but the turnover has two duties in it. One is the duty to provide a safe ship. No, Your Honor. No, there's no duty to provide a safe ship. Okay. Well, just bear with me, because I think the way I read the cases, there is. And the second duty is the duty to warn of non-obvious hazards. That's correct. Okay. The parties have totally focused on the second duty. I think there's case law about the duty to provide a safe ship. But if the hazard is open and obvious and the person undertakes it, then perhaps you've provided a safe ship, and anybody can make their own choice about going in it. But your representation is that there's no duty to provide a safe ship? I think that's an inaccurate statement, Your Honor. The duty is to provide a ship that a competent and experienced stevedore can unload. Right. And that's a safe ship. I accept that definition. Well, you see, when you use the word safe. Okay. I'll take your definition. There's that duty. And there's also this non-duty to warn of non-obvious hazards. Correct. Okay. What about the first duty? Yes. Yes. Okay. So talk to me about that. This ship could have been discharged by a competent stevedore. The discharging continued for many hours after Mr. Bunn walked off the ship. If there was a problem with the specific path that had been or not been treated or which could be seen or not seen by the longshoremen, a competent stevedore could have dealt with that. There was nothing hidden. It was precisely the opposite of something being hidden because the man himself said he saw it. And there are cases cited in our briefs which go to precisely that point, that once the man sees the problem, it is no longer a hidden defect. It is open and obvious by definition. It doesn't matter from your perspective that the shipowner undertakes the duty or undertakes the obligation to take up that particular situation. In other words, the shipowner anticipates there is a known danger onboard the ship. I mean, we've got the Harris case. We've got the Woodruff case. All after the 1981 Supreme Court case from this court here, we've got the federal instructions that are all there, and it seems to indicate that a shipowner is not liable unless he anticipates harm to a longshoreman despite the obviousness of the danger. In the Woodruff case. And I don't get the proposition that comes forth that if it's open and obvious, you don't care about whether the shipowner says, I'm going to fix it or I'm going to do anything about it. I don't understand that proposition. Maybe that leaps from the cases, but someone has got to point that language to me that it doesn't matter that the shipowner anticipates the danger, knows about it, even accepts that he's going to fix it, that if it's open and obvious, you can't get anything. Where is that? I think that's right there in the Woodruff case, which is the very early case, which is where or maybe better. The Woodruff case from this court says that a longshoreman must be a reasonably foreseeable consequence of the exposure to the open and obvious hazard for the shipowner to be liable. And was it reasonable and foreseeable? Well, that's not a complete bomb, you see what I'm saying? No. That would tell you if it's in that instance, then it becomes, well, it doesn't matter if it's reasonable to the shipowner, foreseeable. It's open and obvious from the proposition I've been hearing from here, and I'm not following that. It's not reasonable for the shipowner to anticipate that a man would walk on ice that he sees. Even after someone says, I'm going to get it up. We didn't say we were going to clean the entire ship. What if you had? Would your argument change? Oh, I think it might. Okay. All right, thank you. Thank you. Thank you. If it pleases the Court, I'm Bernard Seville. I represent Richard Bunn, the plaintiff below the appellee here. Mr. Seville, I'm just curious. This is of no particular moment, and I'm sure there's a clear answer. Why didn't the defendant bring a claim over against the stevedore? Because under the 72 amendments, he's not allowed to. He's not allowed to do that. Okay, thank you. That did away with the Ryan decision that exists before the 72 amendments. Okay. So the defendant is left with comparative negligence. That's right. In the Edmunds decision, before the Edmunds decision, a case came up where they tried to apportion liability between the stevedore and the ship owner. And in the Edmunds decision, they said you can't do that, even though it was a very lopsided. They gave about 70 or 80 percent against the stevedore and a small percent, but even so, the ship had to pick up the whole tab. Because under the common law, you can't apportion between joint tortfeasors. Right. And the stevedore company couldn't be sued by the longshoreman under the exclusive remedy provision of 905. So, therefore, you couldn't bring in any money against the stevedore company because, effectively, that would have the longshoreman suing the stevedore. Thank you. Yes. So you had the Second Circuit case in 81, and then the Supreme Court comes behind this case and essentially sort of they're not prepared to go with the Second Circuit on this and agree that the ship owner has precisely the duty of the Second Circuit, and this is the Scindia case. But then our court comes behind that with cases that seems to indicate that if it's reasonably foreseeable as a consequence of exposure to open and obvious, then there can be liability. So how do we parse this out? You're talking about the Legge case? Yes. The Legge case came first. Then you had the Supreme Court come behind that and seems to indicate, well, we're not prepared to quite go to that precise level of duty. But then we've got cases from this court that follow that, the Woodruff case, the Parrish case, and it seems it doesn't lock into this absolute proposition from my observation that you just don't get recovery. If I'm not mistaken, Your Honor, the Legge case came after the Scindia case, the Supreme Court case at Scindia. Yeah, but it went before Howlett. I'm sorry? It was prior to Howlett. Yes. Okay. Do you have Howlett in front of you? I heard counsel's argument. I'm a little confused. I'm not so interested in counsel's argument because we didn't seem to be communicating. But so do you have the Howlett case in front of you? Yes. Can you get a copy of it? Do you have it in front of you? Which case is that, Your Honor? Howlett, H-O-W-L-E-T-T. Do you have it in front of you? I have it here. If you look at pages, what part of Howlett, do you have it? No, I don't, Your Honor. Okay. You'll have to enlighten me on that. Okay. The court says that the duty to warn of any hazards, so long as the hazards are known to the vessel and not obvious to or anticipated by the plaintiff. Right? Yes. And then it goes on to say the precise contours of the duty to warn of latent hazards. So you only have a duty to warn of latent hazards. So if the hazard is open and obvious, how can it be a latent hazard? That's correct. If it's open and obvious, it's not a latent hazard. I'm kind of confused as to what hazard we're talking about in this. Well, didn't everybody know there was snow and ice on the deck? So all I'm getting to is the warning doesn't do anything with respect to hazards that are obvious. That's correct. Doesn't it? The warning doesn't, but the undertaking renders it hazardous. Isn't that what Judge Nickerson, isn't that the way Judge Nickerson reasoned it out? What you mean? That when the ship owner said, we'll take care of the ice. Yeah. Now it's not obvious anymore. That's true. Didn't your client testify? He saw the ice. Yes. He goes in, he takes a few steps, he sees the ice. I mean, I don't think there's any question that he knew about it. Oh, well, your Honor, I think we have to talk about what hazard are we talking about? Are we talking about the overall hazard of the ice all over the deck of the ship? I think we're talking about the ice around the number three hatch. The question is, are we talking about the hazard of the ice in the darkened area around the number three hatch? I think that's what we're talking about. The jury didn't find that to be open and obvious. That was dark. The claim that the plaintiff walked onto that ice, believing it had been treated because he had been assured by the mate's assurance that he was going to do it. That's the differentiating point. That's the differentiating point. They had been told this would be gotten up. It's not a question of whether or not someone needs to warn him of it. They already know it's there. It's open and obvious before everything starts. Then they say, we'll get it up. Two things took it out of the open and obvious. Does the warning do anything if it is open and obvious? Oh, no. The fact that the area was dark, and the fact that he was assured that it had been treated, takes it out of open and obvious. It's not open and obvious anymore. He walked onto that ice expecting that it had been treated. He expected it. It was no longer a hazard because it had been treated. He had been told that. And he couldn't see that it was not treated. So open and obvious has nothing to do with how that was not treated. And yet it was not open and obvious to him. You just said he could see it was not treated. No, Your Honor. There was no testimony that he could see that it was not treated. The evidence was that he could not see that it was not treated. It was dark. Isn't the testimony from his mouth that he felt that there was ice there and he proceeded nonetheless? That's correct. He knew there was ice. He knew there was ice, but he expected that it had been treated so that it had been covered with He knew he was walking on ice. That was the evidence. This would be a different case. How far was he from the opening of the hatch, from the hatch, when he fell the first time? He said he only took a few steps before. He fell twice. He fell twice. Right. So how far was he from the opening? Well, the ship is pretty wide. He was probably a good distance yet from the hatch. What's your ballpark? I don't recall the exact measurements of the ship, but I would say he was a good maybe 50 or 60 feet away from the hatch. Okay. So he fell, what, I don't know, within the first 10 feet of approaching the hatch. That's correct. He fell twice. Yes. And injured himself the second time. Well, the doctor said he injured himself both times. Both times. All right. If he'd made it 30 feet tiptoeing across the ice, this would be a different case, wouldn't it? Yeah. Probably. If he knew that there was ice and it wasn't treated, that would be a different case. He walks halfway to the hatch. He knows this ice hasn't been treated. But he didn't get halfway to the hatch. No, he didn't. He said he only took a few steps. He fell, and he testified that he thought he had just stepped on a spot that hadn't quite been treated. That was his testimony. So he got up and started on, and then he fell again. Then it was apparent it hadn't been treated because he slid back almost to the rail. But when he started out, when he stepped out of that path onto the ice, he thought he was stepping onto treated ice. Now, counsel for the ship seemed to say, if I understood, that the only undertaking by the ship owner was to cut a path to the hatch. Actually, he didn't go that far. But does the record reflect much about precisely what the undertaking was? Was it just a little narrow six-inch path to the hatch, or was it something more substantial than that? Because the whole ship is covered in ice. Right. And nobody expects the ship owner to melt all the ice. Right. Right? Any more than they expect the ship owner to bring the sun up to melt all the ice. Well, the only testimony as to what the ship owner committed themselves to do was not that specific. They didn't say cut a path to the ice. I didn't think so. They knew that coal was going to be loaded onto the ship and that it was going to be loaded onto a series of hatches. Yes. The testimony that actually was. They knew where the longshoremen were going to be walking and working. Well, they knew essentially that the longshoremen had to approach either one end or the other end of the hatch because the hatch cover is covering the side. So he had to walk up toward that. Now, the only testimony as to what the ship owner committed themselves to do was Mr. White's testimony, and he said that the chief officer had committed himself to treat the ice in the work area where the longshoremen were going to have to work. And by the way, was that denied? I'm sorry? Was your testimony of the undertaking, did the ship owner at trial before the jury deny that that had been made? Yes. So the jury had before it in classic contrasting testimony. That's correct. He said he would do it. Ship owner's testimony, no, I didn't. That's correct, sir. Okay. And the jury felt that Mr. White's testimony was more compelling and they brought it into court. Well, they didn't have to find it compelling. They just had to find it a little more credible, right? Yeah, a little more credible. Well, we have to look at this also in the context of being 145 in the morning. There's seven holes on this ship. He goes and he works on the seventh one, and then he's to move to the third one, and he sees the path is clear between the seventh and the fifth. Is that correct? Well, the only path was fore and aft along the starboard side,  but to enable their crew to tend the mooring lines as the ship was loaded, it would go further down into the water, and then they would have to tighten up on the mooring lines. So they had that path cleared fore and aft along the starboard side. They didn't do that to facilitate the loading, and they didn't do that in response to the chief officer's promise to treat the ice in the work area, because that was not exactly in the work area. When Mr. Bunn stepped off of that path and stepped onto the ice that he thought was treated in order to go toward the number three hatch, that was the area that he anticipated had been treated, and it hadn't been. So when he stepped off, and he was in the darkness because the loading mechanism hadn't caught up with him yet. There was no light, and he walked onto that ice in the dark, believing it had been treated. So what is the open and obvious hazard? I'm sorry? What is the open and obvious hazard? Well, once he's in the dark, and once he believes that ice has been treated, there is no open and obvious concept. Okay, so what is the latent hazard then? The latent? The hazard that you don't, that is not open and obvious. Oh. It's not the ice. Everybody knew ice was there, right? That's right. The hazard was the fact that it had not been treated. That was the hazard. The ice, of course, is a hazard. The ice not treated is the hazard, but had it been treated, it would not have been a hazard. That was the point. What hazard are we talking about? We're not talking about the overall ice on the deck of the ship. That didn't get into this. The hazard we're talking about is the area in the number three hatch, which is dark, which the plaintiff had been assured had been treated, therefore it would not have been slippery, but it had not been treated, therefore it was a hazard. Being in the dark and he not being forewarned takes away the open and obvious altogether. Open and obvious really is not in this at all. Well, it's in this to the tune of 15%, right? The problem is it's not in it to the tune of 65% from the perspective of the ship owner. Which it would be in a contributory negligence state, but this is comparative negligence. I had objected to the judge not giving an instruction on contributory negligence that I wanted, but he didn't give it. You're lucky he didn't. Because under maritime law it's not contributory negligence if you don't have a safe alternative, and clearly Mr. Munn did not have a safe alternative with the exception of turning around and leaving, in which case you have to have a safe alternative to continue your job or else you're doing... Well, I don't know if that's true. He knew which hatches were going to be filled in advance. Certainly. So he could have checked the area around each hatch before they started the operation. His employer certainly could have, and indeed his employer had a duty to do that, didn't it? Maybe so. There's no question that his employer may have had that duty. There's joint liability here. That's correct, but under the Edmunds decision, as a matter of fact, the judge below gave the instruction that the jury was not to consider any negligence on the part of the stevedoring company because... I understand. ...of that concurrent negligence. In essence, as was pointed out, the case boils down to a very simple question of fact, and that's what he told the jury. It was whether or not the mate had agreed to treat the ice and failed to do it, which is right on line with the Legge decision because Legge was the same thing. As a matter of fact, the facts of this case are a little bit more compelling than the facts of Legge. In Legge, the damage, that is, the defect, the hazard, was a cable and some grease in the area where the longshoremen were working, but that had been there all day long, and in the daylight they had stepped over it and avoided it. They brought it to the attention of the mate who agreed to fix it and change it and correct it. By nighttime, he hadn't done it, and then Legge was injured. In our case, no one ever got into that area before Mr. Bunn was injured. No one ever went to that area to see whether or not the ice had been treated or not treated. Of course, the ice could have been treated and he could have still fallen, and you wouldn't have a plane. But they didn't claim that they had actually treated it because the shipowner's position was we never promised to treat it in the first place. So that would have been inconvenient. Of course, that has been somewhat reconstructed in the evidence of the case, but in this situation, the simple argument, the simple issue was whether or not the chief officer had agreed to treat the ice, and if he didn't, then was the plaintiff injured as a result of that failure to treat? And the answer was yes, he was injured because the chief officer didn't treat it. There was never any testimony that it had been treated. There was actually testimony, wasn't there, that we had limited salt on board or something like that? Yes, sir, that's true. That was... That came out in deposition? That came up when... Or was that one of your witnesses who said that? Well, yes, it was our witness. Mr. Moxie testified that... The shipowner didn't admit to the truth of that assertion. Well, the facts of the case showed that the Stevedore Company did provide salt for the ship and they took it aboard, but that was after Mr. Bunn got hurt. I see. That wasn't happening in that point. The... So I maintain that the Legge case is right on point. The shipowner undertook a responsibility and failed to carry it out. Mr. Bunn was injured as a result of that. Open and obvious doesn't really address itself, or isn't really in this case because the facts are much more simple than that. And as a matter of fact, it'd be interesting, the term open and obvious does not show up in the Scandia case, in the Scandia order, or Scandia decision. The only place that shows up is where they repeat what the lower court said and then the circuit court, the appeal court, said that that wasn't appropriate and the Supreme Court affirmed the circuit court so that there was no open and obvious really wasn't even in the Scandia case at all and it's not a part of this case. If Mr. Bunn had been walking in the light and walked onto ice that was not treated, yes, then open and obvious would be there because it was apparent and if it was open and obvious and that was what caused him to be hurt, then it would have been up to the Stevedore Company to protect their own people from it. But that isn't what happened here. Thank you very much. Thank you. Tobias, you have a few minutes. Yes. Judge Davis, one question. The ship owner did not deny that there was a conversation between the chief officer and the, not Mr. Bunn, not the planner, but someone else. Oh, of course. Okay. And Mr. Bunn never attempted to speak with anyone on board the ship even though he testified that he himself was the supervisor on board at the time and that was his job was to coordinate with the people on the ship. We don't know what Mr. Bunn was assuming. I don't, that is, that gets into the jury argument. The question is what was Mr. Bunn able to see? He saw the ice and if, and I was surprised to see there are 11 times in the plaintiff's brief is reference to darkness. Well, darkness in all the cases is the quintessential open and obvious condition itself. If it was, if it was dark, if it was unsafely dark, use terrible English, then the ship owner, again, is not liable. The ship owner did not have to somehow be prescient that the man was going to walk off the path that had been created. And I think if you take the Leahy case and put it in this case, in Leahy, there was this small area. If a path had been cut on the masthouse in Leahy, you know, a masthouse is this 25, 30-foot area. But here's my, I'm having, the problem I'm having, you keep talking about the path along the starboard side, but you don't deny that Mr. Bunn had to get to the hatch, do you? We don't, we didn't know exactly where on that ship Mr. Bunn had to go. No, no, you knew he had to get to the hatches to perform the operation, right? You could get to the hatch, you could guide the machine that's on shore by walking up the starboard side, and we didn't know precisely where. So you disagree with, you disagree with that the opening is about 50 feet from the path? The ship is only 100 feet wide, and the hatch itself is at least 60 or 70 feet wide, and you just walk to the side of the hatch. You don't contend that this operation could have been performed with Bunn standing in a path along the starboard side close to the rail? Oh yes, it could have been. You think he could load this coal in the hatch? Really? Oh, I think so. I don't think that's an issue. That's not an issue, because he stepped off knowing we didn't know exactly where he was going to go. How's he going to, how's he going to safely load the coal on the ship without being able to see into the hatch? All right. Is that possible? Look, I'm no expert. I agree with that. You agree with that. So he had to come up alongside the hatch. Right. Which means he had to leave, he had to walk at least, what, 30 to 50 feet? 30. 30 to 50 feet away from the rail. And the path was immediately below the rail, right? There was a path alongside the rail. Along the rail. No path to the hatch. We don't know whether there was, that was a disputed fact. All we know is. We know, because the jury said there was no path to the hatch by its verdict. But we know that before he stepped off the path, he saw that it was icy, and he knew it was icy. And if we hadn't put a path where he needed it, it was his job to go back to where he could tell the chief officer, I need it. And you made that argument forcefully, and as persuasively as you could, to the jury. Yes. And the jury bought 15% of it. That's right. And now you're here saying, no, the jury, the judge should never even have permitted the jury to consider it. That's right. Because the man saw the open and obvious condition, and that under the cases is where it ends. Okay. According to you, what is the open and obvious condition that he saw? The ice. Well, according to them, the open and obvious condition that he saw was the, there's no open and obvious condition because he'd been treated, he's been told that the ice has been treated. So even if he sees the ice, according to the other side, it's no longer an open and obvious problem because he's been told it's been treated. And that makes no sense, Your Honor. That's absurd. That's like saying you can build a bridge and we told you there's a bridge there. You can walk across the bridge. The person sees there's no bridge, but continues to walk and injures himself. That's the logic of their position. I don't think so. That doesn't appeal to my brain. The question has to do the condition of the bridge. Obviously, if you walk off the edge and there's no bridge, fine. But here it's more like there's ice on the bridge. Oh, we'll take care of it. Isn't that the more apt analogy? So he walks up to the bridge, he sees ice, and he thinks it's been treated. But he knows it hasn't been because before. How does he know it hasn't been treated? Because if he falls within the first eight to 10 feet, maybe less of venturing onto the ice, how does he know? He's taking little steps. I knew I was on ice. And he continues. He doesn't walk back to the path. He continues to go forward toward the hatch, according to his own testimony. And the jury penalized him 15% for not doing what you just said. The jury didn't say once he felt the crunch, if it was crunch, of ice underfoot, he should have turned around and taken a different course. As Judge Wynn said, if this were a contributory negligence case in Maryland, North Carolina, or Virginia, I think we're the last three, we wouldn't be here. Ours is going fast. Well, maybe. Anyway, thank you. Thank you very much. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Andre M. Davis, James A. Wynn, Jr.